IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ASHLEY LEWIS, § § **Plaintiff,** § § v. § § BRIDGESTON AMERICAS TIRE § OPERATIONS, LLC; f/k/a § BRIDGESTON/FIRESTON NORTH § AMERICAN TIRE, LLC, § § **Defendant.** § § | CIVIL ACTION NO. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Ashley Lewis files this Original Complaint against Bridgestone Americas Tire Operations, LLC., f/k/a Bridgestone/Firestone North American Tire, LLC ("Defendant" or "Bridgestone"), and would show the Court as follows:

### I.
### PARTIES

1.01   At all times relevant, Plaintiff was a citizen and resident of Desoto, Dallas County, Texas.

1.02   Defendant Bridgestone Americas Tire Operations, LLC, is a foreign business corporation, organized and formed under the laws of the Delaware with its principal place of business in Nashville, Tennessee. Thus, Defendant is a citizen of Delaware and Tennessee. Defendant regularly does business in the State of Texas. Defendant may be served by forwarding the Summons and a copy of this Original Complaint to its registered agent, United Agent Group, Inc., 5444 Westheimer Road, Suite 1000, Houston, Texas 77056-5318.

## II.
### VENUE AND JURISDICTION

2.01   Since complete diversity of citizenship exists between the parties, and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, this court has diversity jurisdiction under 28 U.S.C. §1332.

2.02   Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in Dallas County, Texas, which is in the Northern District. Plaintiff would show that the incident at issue occurred along Interstate Highway 20 in Dallas County, Texas. Additionally, Defendant resides in the Northern District of Texas—Dallas Division, as the term is defined in 28 U.S.C. §1391 (c) (for venue purposes, a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced).

## III.
### FACTUAL BACKGROUND

3.01   This lawsuit arises out of a vehicular accident that occurred on or about June 13, 2022 along Interstate Highway 20 in Lancaster, Dallas County, Texas. At the time of the accident, 42-year-old Ashley Lewis was the lawfully restrained driver of a 2009 Peterbilt Model 365 concrete truck as part of his employment. The truck was equipped with Bridgestone Commercial Truck Tires, model M853, size 11R22.5.

3.02   Suddenly and without warning, the front driver's side tire detreaded and failed causing the truck to roll multiple times. As a result of the tire failure, Mr. Lewis suffered catastrophic injuries including but not limited to, a left leg amputation.

## IV.
## STRICT LIABILITY AND NEGLIGENCE CLAIMS AGAINST DEFENDANT

4.01   The truck tire which failed and is the subject of this suit is a Bridgestone M853, size 11R22.5 ("the Tire"), which was designed, manufactured, constructed, marketed and/or distributed by and through the agents and/or representatives of Defendant.

4.02   Defendant was regularly engaged in the business of supplying or placing products, like the Tire in question, in the stream of commerce for use by the consuming public, including Plaintiff.  Further, such conduct was solely for commercial purposes.

4.03   The Tire in question remained unchanged from the time it was originally manufactured, distributed and sold by Defendant until it reached Plaintiff and ultimately led to his injuries.  Stated another way, the Tire in question was defective and in an unreasonably dangerous condition at all times until it ultimately caused the injuries and damages asserted herein.

4.04   At the time the Tire was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that it would be used by persons such as Plaintiff in the manner and application in which it was being used at the time Plaintiff suffered his injuries.

4.05   There were no mandatory safety standards or regulatory adopted and promulgated by the federal government or an agency of the federal government that were applicable to the Tire at the time of manufacture and that governed the product risk that allegedly caused harm.  Alternatively, the design of the Tire did not comply with mandatory safety standards or regulations adopted by the federal government that were applicable to the product model at the time of the manufacture and governed the risks that caused Plaintiff's injuries.  Again, in the alternative, in the event that such standards were in effect, and they were complied with, they were nonetheless inadequate to protect the public from unreasonable risks of injury or danger, or the manufacturer, before or after marketing the Tire, withheld or misrepresented the information or material irrelevant to the federal governments or agencies determination of adequacy of the safety standards

or regulations at issue in the action.

4.06   With respect to the design of the Tire, at the time it left the control of Defendant, there were safer alternative designs. Specifically, there were alternative designs that, in reasonably probability, would have prevented or significantly reduced the risk of injury to Plaintiff. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of the Defendant by the application of existing or reasonably achievable scientific knowledge.

4.07   At the time the Tire left the control of Defendant, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured or marketed to minimize the risk of injury. By way of example and without limitation, the Tire was unreasonably and dangerously defective in the following ways:

    a.    improper adhesion of the steel belts to surrounding material resulting in tread belt separation and catastrophic failure during normal use;

    b.    failure to incorporate nylon overlays, nylon belt edge layers, nylon safety belts, gum edge strips, spiral wraps or other similar available counter-measures to reduce the hazard of tread belt separation;

    c.    failure to incorporate an adequate belt edge wedge to reduce or eliminate belt edge separation and tread belt separation;

    d.    failure to incorporate adequate steel to rubber bonding ("skim stock");

    e.    lack of proper antioxidants and antiozonants to prevent aging of the rubber compounds;

    f.    failure to incorporate an effective inner liner;

    g.    failure to incorporate a proper anti-degradant package;

    h.    absence of warnings or contained defective and inadequate warnings with respect to the dangers resulting in its use and the likelihood of loss of control of the vehicle in the event of a tread separation;

    i.    use of over-age rubber stock;

    j.      exposure of materials to moisture during the manufacturing process;

    k.      swabbing of rubber materials with solvent;

    l.      improper handling of belt wire;

    m.      improper repairs, including but not limited to, puncturing of finished tires with awls; and

    n.      improper splices and improperly placed cords.

4.08    The above acts or omissions by Defendant were a producing and/or proximate cause of the injuries and damages suffered by Plaintiff.

## V.
## DAMAGES

5.01    As a proximate result of the negligence of Defendant described above, Plaintiff Ashley Lewis is entitled to bring this cause of action for all damages suffered as a result of the injuries sustained in the incident made basis of this suit, including but not limited to:

    a.      Past and future medical expenses;

    b.      Past and future lost wages;

    c.      Past and future pain and suffering;

    d.      Past and future mental anguish;

    e.      Past and future disfigurement; and

    f.      Past and future impairment.

## VI.
## EXEMPLARY DAMAGES

6.01    Plaintiff alleges that each and every negligent act or omission of Bridgestone and its agents, as set forth above, when viewed objectively from the standpoint of policymakers, involved an extreme degree of risk, considering the probability and magnitude of the physical harm to others and that Bridgestone had actual subjective awareness of the risks involved, but

nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiff and others like him and as such, such conduct amounts to gross negligence or malice, as those terms are defined by law, so as to give rise to an award of exemplary or punitive damages, for which Plaintiff now plead against Bridgestone. Additionally, by reason of such conduct, Plaintiff is entitled to and therefore assert a claim for punitive and exemplary damages in an amount sufficient to punish and deter Bridgestone, and other corporations like it, from such conduct in the future.

## VII.
## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

7.01   Plaintiff claims pre-judgment and post-judgment interest at the maximum rate allowed by law.

## VIII.
## JURY DEMAND

8.01   Plaintiff respectfully requests that the Court impanel a jury to decide all fact issues in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer this Complaint and that upon final hearing, Plaintiff recover judgment against Defendant for his damages as they appear at trial hereof together with costs of court, pre-judgment and post-judgment interest, and for such general and equitable relief as Plaintiff may be entitled.

Respectfully Submitted,

*/s/ James L. Mitchell*
**JAMES L. MITCHELL**
State Bar No. 14214300
Jim@PayneMitchell.com
**ANDREW S. BULLARD**
State Bar No. 24104622
abullard@paynemitchell.com
**PAYNE MITCHELL RAMSEY LAW GROUP**
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214/252-1888 Telephone
214/252-1889 Facsimile

ATTORNEYS FOR PLAINTIFF